# D. VANHORN ET AL. v. J. CORCORAN ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LYCOMING COUNTY.

Argued March 18, 1889—Decided June 28, 1889.

[To be reported.]

1. The act of May 1, 1876, P. L. 89 (supplementary to the limited partnership act of June 2, 1874, P. L. 271), authorizing subscriptions to the capital of a limited partnership to be made in property other than cash, contemplates property available for the business of the company and for the payment of its creditors.

2. The certificate must set forth, in its statement, such a description of the property contributed as will enable creditors to ascertain precisely of what the property consisted, and to judge of its value; otherwise, the requirements of the act as to a description of the property are not complied with.

3. Where the statement of the recorded certificate showed that a subscriber " paid in merchandise, lumber, book accounts and bills receivable, transferred to this association, $21,609.18, and in cash $3,390.82, making a total subscription $25,000," the description of the property contributed was insufficient.

4. In such case, it was made to appear that the $21,609.18, so contributed, represented the difference between the estimated assets and liabilities of a firm subscribing to the capital of the association, and if the statement had certified " in this respect according to the fact," the organization would have been defective.

5. Parties doing business as a limited partnership under a defective certi-

ficate of organization, are liable as general partners to a common law action, and creditors are not confined to the remedy provided by § 2, of the act of June 2, 1874.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 338 January Term 1888, Sup. Ct.; court below, No. 221 December Term 1886, C. P.

On October 15, 1886, Daniel Vanhorn, Benjamin Griffin, Charles M. Vanhorn and David H. Roberts, trading as Vanhorn, Griffin & Co., brought assumpsit against James Corcoran and Byron L. Richards, late doing business as Corcoran, Richards & Co., and a number of other persons and copartnerships, together doing business under the name of the Luppert & Kline Furniture Company, Limited, to recover upon certain notes given for the value of merchandise sold and delivered. The defendants pleaded non-assumpsit, payment, payment with leave and set-off.

At the trial on January 23, 1888, the plaintiffs put in evidence the notes upon which suit was brought, and also the articles of association of the Luppert & Kline Furniture Company, Limited, dated August 12, 1882, filed and recorded August 16, 1882. These articles set forth the association of the parties executing the same as a limited partnership, "under and in pursuance of the act of June 2, 1874, P. L. 271, and its several supplements," and contained a statement which in part was as follows:

First. The full names of the persons so associating themselves together and the amount of capital subscribed by each are as follows:

| | |
|---|---:|
| George Luppert, who subscribes . . . . | $35,000 |
| Isaac Newton Kline, John K. Heilman and Abraham H. Heilman, doing business as A. H. Heilman & Company, who subscribe . . . . . | 25,000 |
| James Corcoran and Byron L. Richards, doing business as Corcoran, Richards & Company, who subscribe . . . . . . . . . | 10,000 |
| Alexander M. Dean, who subscribes . . . . | 10,000 |
| John Artley Beeber, who subscribes . . . . | 10,000 |
| Morton David Banks, who subscribes . . . | 10,000 |

Second. The total amount of the capital of said association is one hundred thousand dollars, being subscribed this day, and to be paid by the subscribers thereto as follows : Partly by the conveyance and transfer of certain real and personal property, and partly in cash ; the whole of which is declared to be of the value of one hundred thousand dollars, and is scheduled as follows :

George Luppert paid by a credit on the purchase money of a certain piece of real estate, on which is erected a furniture factory, with all the necessary machinery, etc., lately occupied by Luppert, Kline & Co., situate in Armstrong township, this day conveyed to this association, . . . . . $35,000

Morton D. Banks paid by securing for this association a further credit on the said purchase money from the said George Luppert, for the real estate so as aforesaid conveyed, . . . . . . 10,000

Isaac N. Kline, et al., doing business as A. H. Heilman & Co., paid in merchandise, lumber, book accounts, and bills receivable, transferred to this association $21,609.18, and in cash, $3,390.82, making a total subscription, . . . . . . . . 25,000

James Corcoran, et al., doing business as Corcoran, Richards & Co., will pay by delivering to this association, poplar, bass and ash lumber, at market prices during the five months, from August 1, 1882, with interest, . . . . . . . . 10,000

A. M. Dean will pay in cash, in five equal monthly payments, from August 1, 1882, with interest, . 10,000

J. A. Beeber will pay in cash, in five equal monthly payments, from August 1, 1882, with interest, . 10,000

Third. The business to be conducted is that of the manufacture and sale of furniture of all kinds, with the right to hold real estate, either as purchasers or lessees, and the location of the business is at the factory in Armstrong township, Lycoming county, Pennsylvania.

Fourth. The name of the association is the " Luppert & Kline Furniture Company, Limited."

The plaintiffs then rested, when the defendants called Isaac N. Kline, and made the following offer :

Defendants' counsel propose to show by the witness on the stand, and other witnesses, that I. N. Kline, the witness, was secretary and treasurer of the Luppert & Kline Furniture Company, Limited, a joint stock association organized under the act of June 2, 1874, and its supplements. That the original subscribers to the said certificate of association paid the amount of their subscriptions respectively and wholly to the company so organized, and in the manner in the said articles of association set out, except that in the case of James Corcoran and Byron L. Richards, a subscription which by the terms of the article was payable in lumber, and was actually paid in cash within five months from the date of the organization of the company, with interest; that George Luppert conveyed to the Luppert & Kline Furniture Company, Limited, real estate in Armstrong township, which constituted the plant of the company so organized for the purpose of manufacturing furniture; that the price stipulated between the copartnership so formed and the said George Luppert, at the time the association was formed, was the sum of about $52,000; that the subscription of George Luppert, to wit, the sum of $35,000, was paid as stipulated in the articles of association, being an allowance by him of the credit to that extent of the purchase money; that the subscription of M. D. Banks of $10,000 was fully paid by the further allowance made by said Luppert to the Luppert & Kline Company, Limited, to the credit upon said purchase money, making altogether the sum of $45,000, and that the balance of said consideration, to wit, the sum of about $8,000, was paid by the company in cash to the said Luppert; that the subscription of I. N. Kline, J. K. Heilman and A. H. Heilman, amounted to the sum of $25,000, and was paid as follows: By the transfer to the company, limited, of merchandise, lumber, book accounts and bills receivable, the sum of $21,609.18; a schedule of which was at the time duly made, and the value of the properties in said schedule contained appraised at their true cash value, and that the remainder of said subscription of $25,000 was by said I. N. Kline and others paid in cash, being the sum of $3,309.82.

And further, that on December 29, 1884, I. N. Kline, J. K. Heilman and A. H. Heilman sold their entire interest in the limited company to Henry W. Steinhelper and retired from

said company, the election of said stockholder to membership being immediately made by said stockholders to said company. That prior to that date the plaintiffs in this case had not sold any goods to said company, and had no dealings with them whatever. To be followed by actual notice to these plaintiffs, that before the sale was made upon which this suit is founded, of the retirement of I. N. Kline and others from the concern.

The purpose being to show compliance by the subscribers with the terms of the articles of association; and for the further purpose of showing that A. H. Heilman and others cannot be liable in any event as general partners in this case to these plaintiffs.

Plaintiffs' counsel object to the offer, so far as it does not refer to the withdrawal of the firm of A. H. Heilman & Co., and the offer to prove notice to the plaintiffs of such retirement, for the following reasons: (1) Because the evidence cannot be offered for the purpose of showing compliance with the provisions of the acts of assembly, as the acts of assembly provide that a statement shall be filed containing certain requisites, and these requisites cannot be supplied by evidence aliunde, or by any parol testimony. (2) The evidence offered is an attempt to prove by parol that the statement filed in pursuance of the acts of assembly contains matters that are not in the statement itself; and any defect in the statement cannot be aided by such testimony: it is a record; recorded in pursuance of an act of assembly, and must conform in every particular with the provisions of said act of assembly. The defect therein cannot be cured by any schedule or any matter that is not contained within the statement itself, and recorded with the statement. (3) The evidence offered would only be evidence in case this was a proceeding to enforce the balance on the subscription, and is not evidence where the issue is as in this case, where parties have made themselves liable by reason of non-conformity with the acts of assembly.

By the court: Objections overruled, evidence admitted; exception.[18]

On motion of the plaintiffs' attorneys, the pleadings were amended by striking the names of I. N. Kline, J. K. Heilman and A. H. Heilman, trading as A. H. Heilman & Co., as defendants.

Charge of Court below.

At the close of the testimony, the court, CUMMIN, P. J., after reading the certificate of organization of the furniture company, proceeded:

By these articles of association these persons agreed to form a limited partnership under the acts of assembly relating to that subject. On the day these articles of association were entered into, Mr. Luppert executed a deed in which his wife joined, to this limited company, for real estate of the value of some fifty-two or fifty-three thousand dollars. Now on the 16th of August this deed was filed and recorded: this put the title of the real estate in this limited company. Mr. Luppert subscribed $35,000; M. D. Banks subscribed $10,000; A. H. Heilman & Co. $25,000; Corcoran, Richards & Co. $10,000; Alexander M. Dean $10,000, and J. A. Beeber $10,000, thus making up a total sum of $100,000, which was the amount of capital named in the articles of association.

Now was this capital stock paid into the company? The evidence is clear and satisfactory that the real estate which was transferred by Mr. Luppert to this company was of the value of the consideration named, $52,000 in round numbers. He had subscribed for $35,000 of the stock; that left him a balance of $17,000 due from the company after he had made the deed. Mr. Banks, who had subscribed $10,000, arranged for the balance of that $10,000 out of the $17,000, in such a way as was satisfactory to Mr. Luppert. Mr. Luppert gave the credit, and so the company received that credit. That left a balance of $7,000. A. H. Heilman & Co. subscribed $25,000. They paid their subscription partly in personal property and partly in cash, and the evidence is clear and satisfactory that all the real and personal property was of the value it was represented to be. Corcoran, Richards & Co. subscribed to pay in lumber, but they paid in cash within the time; Alexander M. Dean subscribed in cash and paid in cash; J. A. Beeber subscribed in cash and paid in cash. The real estate and personal property was worth at the time it was turned in, the several amounts it was put in at. The appraisements had been made by disinterested parties, and the evidence is satisfactory that the whole capital stock of $100,000 was paid into this limited company in cash or its equivalent.

\* \* \* \* \* \* \* \*

Charge of Court below.

The next day we come to is April 22, 1885. This is the day when this bill of goods was sold by the plaintiffs to this limited company. These notes in suit were given by the company to the plaintiffs in May, June and July, 1886. This limited company is certainly liable for this debt, and under a proper action a judgment would certainly be entered in favor of the plaintiffs against the company, limited. This the plaintiffs now ask, but they claim that the members of the company, limited, are liable as general partners, and as such seek to hold them in this action. [They claim that defective statements were made at the formation of this company, limited; not false or fraudulent, but defective, in this, that they do not state particularly the items and property turned in, with the respective value of each item set out. The statements filed are not, perhaps, as fully descriptive as they should have been, but surely if they are true, if the full value was there, and the company received the benefit of it, which is fully established by the evidence, it is the same as if the whole amount had been paid in cash.] [16]

Persons who might deal with this company, limited, had a right to expect that they had at their organization one hundred thousand dollars in cash, or its equivalent. As it has been shown that this full capital has been paid in, I cannot believe that more is required of the members of this company. This is the chief or material compliance with the statute under which they are organized. The whole capital stock was then paid in. How can the plaintiffs say that they were misled, or suffered any injury by statements of property not being fully descriptive, as they might have been, when this technicality is without a spark of merit, and ought not to have weight in determining this case under the facts as established?

Sundry points have been submitted by counsel.

The plaintiffs' counsel respectfully ask the court to charge the jury as follows:

1. That the articles of association filed by the defendants, and under which they claim to have been organized and carried on business as a limited copartnership, are defective upon their face, in that the description of the property subscribed is too general to enable any one to form a correct estimate of the extent of the property, and gives only a lumping valuation;

which renders it equally difficult to judge of the value of the property subscribed, and is therefore not a compliance with the requirements of the act of 1876, and the defendants are liable as general partners.

\*     \*     \*     \*     \*     \*     \*     \*

9. That under all the evidence in this case the plaintiffs are entitled to recover.

Answer: The plaintiffs' points are all refused, under the evidence established in this case.[1][9]

Defendants' counsel respectfully ask the court to charge the jury as follows:

1. That the defendants, having entered into an association under the act of June 2, 1874, and its supplements, and having signed and acknowledged a certificate or articles of association setting forth the full names of the persons associated, the amount of the capital of said association subscribed for by each, the total amount of capital, and when and how to be paid, the character of the business to be conducted and the location of same, the name of the association with the word " Limited " added thereto as part of the same, as provided by said act, the liability of the defendants is measured by their subscriptions respectively, and no suit can be maintained against them as general partners.

2. That the Luppert & Kline Furniture Company, Limited, is primarily liable for the debts of the association, and that the unpaid subscriptions to the capital stock, if any, made by the members respectively, can only be collected in the manner provided by the act under which the association is formed, after judgment against the association itself.

3. That if the jury believe from the evidence that certain of the defendants subscribed and paid their subscriptions in cash, and that one or more of the defendants subscribed and paid part in cash and part in property, there can be no recovery against any of the defendants in this action, they being sued as general partners.

4. That it was the legal right of any subscriber to the capital stock of the Luppert & Kline Furniture Company, Limited, to make contributions to the capital thereof in real or personal estate or other property, at a valuation to be approved by all the members subscribing to the capital of said association; and any

defect in the description or schedule of property so contributed, even if such defect exists, can only affect the parties so subscribing, and only to the extent of the value or amount of such defective subscription, and the remedy of the creditor is as for unpaid subscriptions under § 2 of the act of June 2, 1874.

\* \* \* \* \* \* \* \*

7. That under all the evidence in this case the verdict must be for the defendants.

Answer: As to the first, second, third and fourth points: These points relate to the remedy of the creditors as against the limited copartnership. I am of opinion that these points should be affirmed. The second section of the act of June 2, 1874, relating to limited companies, provides a method for collecting unpaid subscriptions. That should be considered in connection with the act of March 21, 1806, 4 Sm. L. 332: "In all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued; and no penalty shall be inflicted or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such acts into effect." This act of 1874 and its supplement of 1876 are widely different from the act of 1836. That act contained many penalties, and they were named as penalties. If persons going into such a partnership did not do this, or that, or omitted to do this, or that, they were held as general partners. No such thing is found in the acts of 1874 or 1876. Both the latter acts relate to a different kind of partnership. The law in relation to limited companies now requires that the members must pay up their capital stock, and if they do not, or if they do it in such a manner that it may be declared in law a nullity, then there is a remedy to make them pay their subscription; and it seems to me that there is a full remedy provided in the act of 1874 to protect everybody against these companies.[10]

\* \* \* \* \* \* \* \*

The seventh point is affirmed.[15]

[Gentlemen of the jury, the plaintiffs have not made out a case which would entitle them to your verdict. You will therefore render your verdict for the defendants.] [17]

The jury returned a verdict for the defendants, as directed. Judgment having been entered, the plaintiffs took this writ, assigning as error, inter alia:

1, 9. The answer to the plaintiffs' points.[1] [9]

10, 15. The answers to the defendants' points.[10] [15]

16, 17. The portions of the charge embraced in [ ] [16] [17]

18. The admission of the defendants' offer.[18]

*Mr. Samuel Linn* (with him *Messrs. J. J. & V. H. Metzger* and *Mr. Arthur D. Williams*), for the plaintiffs in error.

Counsel cited: Act of June 2, 1874, P. L. 271; Act of May 1, 1876, P. L. 89; Maloney v. Bruce, 94 Pa. 249; Eliot v. Himrod, 108 Pa. 569; Keystone B. & S. Co. v. Schoellkopf, 11 W. N. 132; Bement v. Phila. Brick Co., 5 W. N. 58; Bates on Limited Part., § 50; Haggerty v. Foster, 103 Mass. 17, 19; Durant v. Abendroth, 69 N. Y. 148, 152 (25 Am. Rep. 158); Pierce v. Bryant, 5 Allen 91; Andrews v. Schott, 10 Pa. 55, 56; Vandike v. Rosskam, 67 Pa. 330.

*Mr. J. A. Beeber* and *Mr. H. C. McCormick*, for the defendants in error:

If a limited partnership association is formed under the act of 1874 and its supplement of 1876, permitting property to be contributed as capital if properly scheduled, and it appears by the statement filed that some of the members paid their subscriptions by contributing property, others partly in cash and partly in property, and still others wholly in cash, and on the trial of a case brought to make the members liable as general partners, it is shown that the cash was actually paid as agreed, and that the property was contributed and of the value set forth, can a verdict be recovered against all the members as general partners, because the property so contributed was not fully itemized? We contend that under the statutes and the decisions of this and other courts, no such verdict can be rendered: Act of June 2, 1874, P. L. 271; Act of May 1, 1876, P. L. 89; Maloney v. Bruce, 94 Pa. 252; Keystone B. & S. Co. v. Schoellkopf, 11 W. N. 133; Seibert v. Bakewell, 87 Pa. 506; Act of March 21, 1806, 4 Sm. L. 332; Koch v. Water Co., 65 Pa. 288; Bement v. Brick Co., 12 Phila. 494; Brown v. Benner Trap Co., 18 W. N. 114; Lauder v. Tillia, 117 Pa. 304.

OPINION, MR. CHIEF JUSTICE PAXSON:

The first assignment of error presents a question which controls this case. It alleges that " the court erred in their answer to the plaintiffs' first point, which point was :—

" That the articles of association filed by the defendants, and under which they claim to have been organized and carried on business as a limited copartnership, are defective upon their face, in that the description of the property subscribed is too general to enable any one to form a correct estimate of the extent of the property, and gives only a lumping valuation, which renders it equally difficult to judge of the value of the property subscribed, and is therefore not a compliance with the requirements of the act of 1876, and the defendants are liable as general partners."

The answer of the court was : " Refused under the evidence established in this case."

The defendants were sued as general partners. Their defence was that they were members of a limited partnership organized under the act of June 2, 1874, P. L. 271, and its supplement of May 1, 1876, P. L. 89. The former act requires a cash capital; the latter allows the members to make contribution to the capital " in real or personal estate, mines, or other property, at a valuation to be approved by all the members subscribing to the capital of such association : Provided, That in the statement required to be recorded by the first section of said act, subscriptions to the capital, whether in cash or property, shall be certified in this respect according to the fact; and when property has been contributed as part of the capital, a schedule containing the names of the parties so contributing, with a description and valuation of the property so contributed, shall be inserted."

It will be noticed that the act gives a wide latitude as to the kind of property that may be contributed as capital. At the same time, it is very evident that it contemplates a real actual capital in cash, or in property available for the business of the company and the payment of its debts. It was never intended that the property contributed as capital should be moonshine, wild-lands, or water-lots. If the business be merchandising, a stock of goods and the store-house in which they are contained would be legitimate; if the business be mining, a mine with its

machinery and improvements would be appropriate; and if manufacturing, the factory building, with its machinery and the stock, manufactured and unmanufactured, would be in the direct line of its business, and therefore a proper and available contribution to capital. The point of these remarks will appear later.

The capital stock of this association consisted of $100,000. A portion of this was contributed in cash. An examination of the certificate shows, however, that "Isaac N. Kline et al., doing business as A. H. Heilman & Company, paid in merchandise, lumber, book accounts, and bills receivable, transferred to this association, $21,609.18, and in cash $3,390.82, making their total subscription $25,000."

This description of the property contributed is upon all fours with that contained in Maloney v. Bruce, 94 Pa. 249, of which it was said by this court: " This is not the kind of schedule contemplated by the act of 1876. The description is too general to enable any one to form a correct estimate of the extent of the property, and a lumping valuation renders it equally difficult to judge of values. The property contributed was intended as the equivalent of a cash capital, and the plain object of the provision in the act of 1876, requiring a schedule, was to enable creditors to ascertain precisely of what the property consisted and to judge of its value. If parties seek to have all the advantages of a partnership, and yet limit their liability to creditors, they must comply strictly with the act. Where property has not been contributed, scheduled and valued, as the act of 1876 directs, there is no payment of the capital."

The description in this case is even more vague than in Maloney v. Bruce. It consists of " merchandise, lumber, book accounts, and bills receivable." A creditor looking at this description could not form any estimate of its quantity, character, or value. For all practical purposes it might as well have been omitted. If the property had been properly scheduled, an estimate of its value might have been made approximating the truth. As an illustration, if the general and indefinite word "lumber" had been followed by the words " consisting of 100,000 feet of No. 1 yellow pine flooring," almost any business man could have formed a fair idea of its value, or he could have ascertained it from any one engaged in the lumber business.

Opinion of the Court.

The learned counsel for the defendants below evidently felt the strain of this part of their case when they made the offer of evidence embraced in the eighteenth assignment. The evidence referred to was admitted by the court, and if properly assigned for error we would discuss and rule the point.* As it was not properly assigned, we refer to it merely to say that the evidence received in support of it only made the defendants' case so much the worse. For it thus appeared that the defendants did not contribute any specific property at all; they merely contributed their interest in a firm, with estimated assets of $75,000 and certain debts of $53,000. The value of the difference between the two was the alleged contribution of $21,609.18. The assets of the firm, estimated at $75,000, were turned over to the limited partnership, subject to $53,000 of debts which the latter assumed to pay. It is easy to see, therefore, why there was no schedule of the property contributed. There was no property to schedule. The whole of it in equity was liable to creditors, and could not be withdrawn from them without fraud until the last dollar of the debts of the firm was paid. So that instead of property the defendants contributed a mere equity, to wit, whatever was left of the assets of the firm after the payment of its debts. Their allegation in the certificate that they had contributed $21,609.18 in property was inaccurate, and came dangerously near being a false statement, though I do not think it was so intended. Had the certificate set forth that their contribution consisted of their interest in a firm subject to the payment of its debts, it would have conformed to the truth, but it would not have been a compliance with the act of 1876. That act contemplates such contributions as shall be available to aid the business and pay the creditors of the limited partnership. Of what use was this contribution? It could not properly be made available until the debts were paid. To turn the property and pay $53,000 of debts requires time. In the meanwhile the debts are drawing interest, and by the time the assets are converted, even if there is no shrinkage, there may be little surplus left. The court below was evidently misled by the idea that the assets were worth their estimated value of

* See Hawes v. O'Reilly, 126 Pa. 440; Battles v. Sliney, 126 Pa. 460.

$75,000. Conceding that they were, it by no means follows that the margin between the assets and the debts was worth $21,609.18. The evidence does not show that it was, or that the company has realized any such sum, or any sum whatever, after the payment of the $53,000.

The defendants contend, however, that even if there was an irregularity in the formation of the association, they are not liable as general partners, but that the plaintiffs must proceed under the act of 1874, as was done in Maloney v. Bruce, supra. It is true, in that case there was no attempt to hold the defendants as general partners; the suit was against the company, and after judgment, leave was granted to take out execution against the defaulting member. The creditor there had his election to proceed against the association as a valid organization and pursue the remedy pointed out by the act of 1874, or, to hold all the members liable as general partners. He chose the former. In the case in hand, the creditors elected to treat the members as general partners, or as liable as such. This they had a perfect right to do. Prima facie, a firm transacting business is a general partnership. It can only shelter itself behind the act of 1874 and its supplements by showing a strict compliance with the law. It was said in Eliot v. Himrod, 108 Pa. 569, "Each partner is liable unless saved by statute. If the partners have not complied with the statutory requisites a limited partnership has not been formed." To the same effect is Maloney v. Bruce, supra. This is the key to the whole situation. A limited partnership that has not complied with the law of its creation is not a limited partnership at all; it is, however, a partnership in which all the members are liable as at common law. If the defect appears upon the face of the certificate, it is the duty of the court to rule it as a question of law. It would lead to more than confusion to permit a defective schedule like this to be supplemented by evidence to show that there really was property and that it was of the value indicated. It would open the door to all kinds of fraud and perjury, and no man could know whether such an association was a valid limited partnership, until after the verdict of a jury.

As there were no disputed facts in this case, the learned

judge below should have given the jury a binding instruction to find for the plaintiffs for the full amount of their claim.

Judgment reversed and a venire facias de novo awarded.