# Fourth Street National Bank *v.* William Whitaker, Appellant.

170   297
170   306
f 170  308
170   312

*Partnership—Limited partnership under act of March 21, 1836—Liability of special partner—Misstatement of capital.*

Under the limited partnership act of March 21, 1836, P. L. 143, if a special partnership is continued or renewed, it must be in the same position, so far as the special capital in concerned, as when it was originally formed. Such capital must be unimpaired; it must be in such condition as to be available for creditors, and it is the duty of the general partner to furnish this information in his affidavit. If the capital has in fact been impaired, and the affidavit for renewal falsely states it to be unimpaired, the special partner becomes liable to the creditors as a general partner, and it is immaterial that he was in fact ignorant that the capital was impaired. It was his legal duty to know the truth or falsity of the statements placed on the public record, and, although ignorance of the falsity of the statement may exempt him from the imputation of moral turpitude, the statute does not exempt him from legal responsibility.

Distinctions drawn between impaired and unimpaired capital of business partnerships are without weight in the interpretation of the act of March 21, 1836, as the object of the act is to give information to the creditor, of the financial standing of the partnership when it invites business.

Where a renewal certificate falsely states that the special capital is unimpaired, the fact that the partnership had on hand at the time of the

filing of the certificate, merchandise of a value in excess of the special capital is insufficient to relieve the special partner of general liability, if it appears that the debts of the firm were at the time in excess of its assets.

In an action to hold a special partner liable as a general partner on partnership notes, the fact that the notes in suit were given after a false renewal certificate was filed, to take up notes given prior to the filing of the certificate, and which had matured subsequently thereto. is no defense. The general partners have an implied right to negotiate for an extension of time on matured notes, and give those of the new partnership which was in possession of all of the assets of the old.

Argued Jan. 21, 1895. Appeal, No. 121, July T., 1894, by defendant, from order of C. P. No. 2, Philadelphia County, March T., 1894, No. 644, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a promissory note given by a limited partnership, formed under the act of March 21, 1836, P. L. 143. Before JENKINS, J.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was order making absolute a rule for judgment for want of a sufficient affidavit of defense.

*Wm. Rudolph Smith* and *Charles Biddle*, for appellant.— The act of assembly does not inflict a general liability upon a special partner where there are debts outstanding at the renewal of a limited partnership: Ropes v. Colgate, 17 Abbott's N. C. 136; Fifth Ave. Bank v. Colgate, 120 N. Y. 381; Haddock v. Grinnell Mfg. Co., 109 Pa. 372.

The plaintiff's construction destroys the object of the act, and makes it impossible for the special partner to comply with its terms.

Plaintiff's construction is not necessary for the protection of creditors: Christy v. Sill, 131 Pa. 503.

Plaintiff's construction is inconsistent with the other decisions of this court regulating limited partnership: Singer v. Kelly, 44 Pa. 149.

The plaintiff's construction renders the act a trap : Cock v. Bailey, 146 Pa. 328 ; White v. Eiseman, 134 N. Y. 102 ; Shafer's App., 106 Pa. 49 ; Siegel v. Chidsey, 28 Pa. 286.

Plaintiff's construction is contrary to the spirit in which the act is interpreted: Laflin & Rand Powder Co. v. Steytler, 29 W. N. C. 230.

If the defendant is to be held liable at all by reason of anything that occurred in the renewal of the partnership for 1894, he can, of course, only be held liable for those debts which were incurred after that period. He can only be held as a general partner who has come into the firm at the time of the failure of the condition requisite to make him liable only as a special partner: Fagely v. Bellas, 17 Pa. 67 ; Christy v. Sill, 131 Pa. 492; Babcock v. Stewart, 58 Pa. 179 ; Baker's App., 21 Pa. 76 ; Shamburg v. Ruggles, 83 Pa. 148.

In this case there was no assumption by the partnership of 1894 of the debts of 1893, other than as they were liable for them during the partnership of 1893. The notes which were given were simply for the renewal of notes which were made in 1893, and were in no way a satisfaction of those notes ; it did not change the status of the parties in relation to their former contract in any way : Campbell v. Sloan, 62 Pa. 481 ; Miller v. Irwin, 85 Pa. 376 ; Stephens v. Monongahela Bank, 88 Pa. 158 ; Kemmerer's App., 102 Pa. 558.

*Samuel Dickson, Richard C. Dale* with him, for appellee, cited : Vanhorn v. Corcoran, 127 Pa. 255 ; Whittemore v. MacDonald, 6 Up. Can. Q. B. 547 ; 13 Am. & Eng. Ency. of Law, 810 ; Bank v. Colegate, 120 N. Y. 381 ; Louisiana v. Pilsbury, 105 U. S. 278 ; 2 Hare's American Constitutional Law, 722.

OPINION BY MR. JUSTICE DEAN, October 7, 1895 :

On the 31st of December, 1891, Granville B. Haines, Richard Wood, Samuel B. Brown, Richard W. Bacon and William Whitaker, of Philadelphia, by the name of Haines & Company, formed a limited partnership, under the act of 1836, for carrying on a wholesale and retail dry goods business ; the term of the partnership was one year ; Richard W. Bacon and William Whitaker were special partners, the others general ; the special

contribution of capital by each of the special partners, Bacon and Whitaker, was $100,000; $50,000 each in cash, and a like sum in merchandise, their entire contribution as special partners being $200,000. The articles of association were subscribed by all the partners, duly acknowledged and recorded in the office of the recorder of deeds for Philadelphia. At the end of the year 1892, under the provisions of the 11th section of the act of 1836, the partnership was renewed for another year. That section reads thus: "Every renewal or continuance of such partnership, beyond the time originally fixed for its duration, shall be certified, acknowledged and recorded, and an affidavit of a general partner be made and filed and notice be given in the manner herein required for its original formation, and every such partnership which shall be otherwise renewed or continued shall be deemed a general partnership."

In the articles of renewal is this averment, referring to their articles of the year previous: "The amount of capital contributed by each of the said special partners in the common stock was $100,000, one half thereof being in cash, and the other half thereof being in goods and merchandise, making the aggregate amount of capital contributed by them $200,000, as designated in the said original certificate, and the same remains unimpaired and undiminished, as their contribution to the present renewal and continuance of the said limited partnership, being in merchandise, an inventory and appraisement whereof have been filed in the court of common pleas No. 3 of Philadelphia county."

On the expiration of this renewed partnership at the end of the year 1893, there was another renewal for a year with like averments and certificate in the renewed articles, which were also made of record, as required by the act. The business was carried on, under this last renewal, until the 26th of March, 1894, when a general assignment for the benefit of creditors was made by the partnership. Before the assignment, the Fourth Street National Bank, the plaintiff, became the holder, for value, of six notes drawn by the partnership, each in the sum of $5,000, payable to the bank's order on demand, and dated respectively February 24, March 1, 5, 8, 14, and 21, 1894. These not being paid on demand, the bank brought suit against all the members of the firm, as general partners. The sworn statement of claim

avers: 1. That plaintiff accepted the notes on the faith of the writing signed by all the members of the partnership, and recorded in the office for the recording of deeds, the 30th of December, 1893. 2. That said writing set forth that the original contribution of $200,000 in cash and merchandise, by the special partners, " remains unimpaired and undiminished as their contribution to the present renewal." 3. That at the time said writing was made and put of record, the entire original capital contributed by the special partners had been consumed and lost in the business, and the partnership of Haines & Company was insolvent. 4. That the statement, that the same remained unimpaired and undiminished, was false in fact.

The plaintiff therefore averred liability of each and all of the members of the firm as general partners.

To this the defendant, William Whitaker, made affidavit of defense, setting out, that on the last renewal of the partnership, on the 30th of December, 1893, all the members joined in a petition to the court of common pleas for the appointment of an appraiser of the assets of the proposed renewed partnership, and the appointment was made; that the appraiser under oath reported he had examined carefully and appraised the goods and merchandise of the proposed partnership, and that these included the original contributions of Whitaker and Bacon, the special partners, and the value of the same, as merchandise, was $200,000; that the partnership had other merchandise, accounts and cash, more than sufficient to pay its debts; further, that the $200,000 of merchandise appraised as the original contribution of capital by the special partners was set apart as such, and transferred to the new partnership. The defendant then avers on this preliminary statement of facts: 1. That he, at the time of the renewal, believed the statement and affidavit of the appraiser to be true, and that he, defendant, had done all that was required of him as a special partner. 2. That he is informed and believes the notes were not accepted by plaintiff on the faith of the statement; that the notes in suit are renewals of notes given for partnership debts of 1893, and are but a continuation of the evidence of indebtedness of the older partnership, before the articles of December, 1893, for renewal were entered into. 3. That the notes sued on were given without his knowledge or consent, and plaintiff knew when it accepted

them the general partners had no authority to impose liability on him except as special partner. 4. That he has no personal knowledge as to any misstatements of fact in the articles of 1893; that he believed the statements of the general partners and of the appraiser, whose duty it was to know, to be true. On the record thus made up, plaintiff took a rule for judgment for want of a sufficient affidavit of defense; after argument, the court below, in a carefully considered opinion, made the rule absolute, and defendant appeals.

The averment in plaintiff's statement that when the last renewal was signed the entire capital stock of the special partners had been lost in the business of Haines & Company, and the partnership was largely insolvent, is not denied in the affidavit of defense; it is denied by defendant there was any intentional misstatement on his part. It must, therefore, be here taken as true that, when all the members joined in the representation on the public records that the $200,000 capital remained unimpaired and undiminished, that statement was untrue in fact.

The question then is, what effect, if any, does an unintentional misrepresentation of this character have on the liability of defendant as a member of the partnership? As already quoted, the 11th section of the act provides for the attesting and recording of articles of renewal, and public notice of the same, under the same formalities as are required in the original formation of the partnership. The penalty of a failure to comply with the directions of the act as to the first organization is found in the 8th section, as follows : " And if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all engagements thereof, as general partners."

This court held, in Haddock v. Grinnell Co., 109 Pa. 372, that: " This evidently means that the affidavit shall give as full information upon the renewal as upon the original formation of the limited partnership. A mere formal affidavit setting forth the renewal only, would not give creditors any valuable information as to the condition of the firm, and the object of the act was to provide this notice."

Andrews v. Schott, 10 Pa. 47, is to the same effect, although in this last case there had been the introduction of a new part-

ner, and the decision was rested on the ground that there was the formation of a new partnership instead of the renewal of the old one. But the point is settled by a deliberately considered judgment in Haddock v. Grinnell Co., supra, that the requirements of the act, as to statement and affidavit for renewal, are as rigid as in those for the original formation of the partnership.

The object of the act was to open a venture to capital, with the protection or advantage of restricted liability; but upon a condition, that the public should have full means of knowledge as to the amount and character of the venture, and thereby be enabled to form a judgment as to how far the partnership was worthy of credit.

Here the record contained the joint representation to the public, of all the partners, in December, 1893, that the original $200,000 remained unimpaired and undiminished, when, through business losses before that date, it had in large part disappeared.

We do not consider it material that, as concerns this defendant, the misrepresentation was not intentional; that concerns his ease of conscience, but it neither restricts his liability nor affects the rights of creditors. The act seems to be carefully silent as to any modification of the language which operates to inflict the penalty. It does not say, willfully, knowingly, intentionally false statement, but simply, "if any false statement be made," then all persons interested shall be liable as general partners. As to the nature of such a misstatement as this, it is only necessary to recur to Haddock v. Grinnell Co., supra :—" When a special partnership is continued or renewed it must be in the same condition, so far as the special capital is concerned, as when it was originally formed. Such capital must be unimpaired; it must be in such condition as to be available for creditors, and it is the duty of the general partner to furnish this information in his affidavit. If this duty is neglected, the partnership becomes general, and the special partner has no immunity."

Clearly, there was a false statement here of a most material fact, and although not known to defendant when he joined in the subscription to the articles, he cannot, for that reason, claim immunity as a special partner; it was his legal duty to know

the truth or falsity of statements subscribed to by him, and placed on the public records, and although ignorance of its falsity may exempt from the imputation of moral turpitude, the statute does not exempt him from legal responsibility.

The distinction drawn by the learned counsel for appellant between impaired and unimpaired capital of business partnerships is without weight in the interpretation of this statute; the object is to give information to the creditor of the financial standing of the partnership, when it invites business; its credit depends on its ability to pay; its ability to pay depends on the value of assets it can lawfully appropriate in payment; this partnership did have, in December, 1891, $200,000 capital in money and merchandise, to which the creditor of that term could look for payment of his debts; but, in December, 1893, the partnership was wholly insolvent; all its assets were insufficient to discharge its indebtedness; it had $200,000 worth of merchandise on hand, which was set aside, and called unimpaired and undiminished capital of the special partner. But to whom did this merchandise in equity belong? Certainly to those who had given credit on the strength of it, and it was under a pledge, both legal and moral, to them for their debts; all that was needed to enforce forfeiture of the pledge was a judgment ripe for execution. True, the mere physical possession of the merchandise was in the partnership, but the special partners could not have withdrawn from the insolvent firm $200,000 in cash, and have held it against the creditors; how could the partners, all consenting, lawfully put aside for the same partners $200,000 worth of merchandise? Yet it was represented by the statement, this $200,000 was subject to the claims of future creditors, as if the partnership had been then formed, and the capital first contributed, when the fact was, after having undergone the perils of two years' business, it was impaired to the amount that the debts of the insolvent firm exceeded the assets. Of this important fact the statement contained no hint. As is said in Vanhorn v. Corcoran, 127 Pa. 255, where the assets of a partnership largely indebted were turned over as a contribution of capital to a limited partnership: "The whole of it in equity, was liable to creditors, and could not be withdrawn from them without fraud, until the last dollar of the debts of the firm was paid. So that instead of property, the defendants

contributed a mere equity, to wit, whatever was left of the assets of the firm after payment of its debts."

As to the notes sued on being given for notes issued before the filing of the renewal certificate, the evidence of the old debt was extinguished, and a new security given; the general partners had an implied right to negotiate for extension of time on matured notes, and give those of the new partnership, which last was in possession of all the assets of the old.

It is argued by appellant, the effect of sustaining the judgment of the court below, here, will be to discourage the formation and renewal of limited partnerships, because capitalists could not longer invest their money prudently in such business enterprises. We have no fears of such consequence; for almost sixty years, limited partnerships have multiplied and prospered in this commonwealth, under an unbroken line of decisions, which have uniformly exacted strict adherence to all the material requirements of the law; the credit of such associations stands deservedly high in public estimation, because those who trust them feel they can rely on the truthfulness of their public statements; this confidence can only be maintained by a rigid judicial enforcement of those requirements which the legislature plainly deemed important; no prudent capitalist will refrain from investment in such enterprises, because compelled to a strict observance of the truth with regard to material facts; no prudent creditor will trust them, if this measure of business honesty be not exacted.

We see no error in the judgment, and it is therefore affirmed.