## Singer *versus* Kelly.

| 44 | 145 |
| 170 | 314 |

*Liability of Special Partner under the Limited Partnership Law.*

1. Under the Limited Partnership Law, a special partner cannot be personally involved, except by his own acts of violation or omission of duty, or by assenting to those of his copartners when he knows or is presumed to know them.

2. Hence an alteration by the general partners, in the nature of the business provided for in the certificate of copartnership, without the knowledge of the special partner, does not make him a general partner so as to render him personally liable to the creditors of the firm.

3. It is not the duty of the special partner to care for or collect the assets of the firm after failure.

4. The special partner could not be affected by any assignments of the assets of the firm, if he had not assented thereto; and where there was no offer to prove that assent, but only that the general partners had made them, it was properly rejected.

ERROR to the District Court of *Philadelphia.*

This was an action of *assumpsit*, brought by Thomas Singer against William J. Martin, William McAllister, and Charles Kelly, copartners trading as Martin & McAllister.

The plaintiff declared on four promissory notes drawn by Martin & McAllister, to their own order, and endorsed by them. There was no service on Martin, but the other defendants appeared and pleaded *non assumpsit.* The defendants were partners in the "general commission business," under the Limited Partnership Law of Pennsylvania, Martin and McAllister being the general partners, and Kelly the limited partner.

The firm having failed, an effort was made in this suit to hold all the defendants liable as general partners.

The defence set up by Kelly, contained in an affidavit which accompanied his plea, was, that he never had been a general partner with the other defendants, or either of them, but that he was a limited partner under the Act of Assembly authorizing the formation of limited partnerships.

Under the ruling of the court below, there was a verdict and judgment in favour of the plaintiff for $1237.81; whereupon the defendant sued out this writ.

There were several assignments of error as to the admission and rejection of testimony, and the instruction given to the jury as to the alteration of the business of the firm; but the leading question on the trial of the cause, which was defended by Kelly

8 WR.—10

[Singer *v.* Kelly.]

alone, was that of his liability under the provisions of the Limited Partnership Law.

All the important facts of the case will be found in the opinion of this court.

*William S. Price,* for plaintiff in error.

*J. F. Johnston* and *William L. Hirst,* for defendants.

The opinion of the court was delivered, January 19th 1863, by
THOMPSON, J.—On the 15th of June 1856, a copartnership was formed for the transaction of a general commission business, in the city of Philadelphia, between William J. Martin, William McAllister, and Charles Kelly, under the firm name of Martin & McAllister. It was to be a partnership under the Act of Assembly of the 2d of March 1836. Martin and McAllister were to be the general partners, and Kelly the special partner. The firm was duly organized, and Kelly paid in $20,000 in cash, his agreed contribution to the firm. The firm commenced business, but in about six months failed, sinking the entire sum contributed by the special partner, and had an unliquidated indebtedness of some $78,000, which the assets were totally inadequate to satisfy.

Under these circumstances, the plaintiff has brought this action against all the partners, seeking to make the special partner liable on the ground that the business of the firm was changed, and that such change, without first having a new certificate, rendered him liable.

The evidence of a change, consisted of two distinct purchases by Martin & McAllister: one on the 26th of June 1857, of fifty bales of cotton, amounting to $4200, for which they gave notes; and the other four days after, of sixty tierces of rice, at $2100, also on a credit of four months.

The learned judge of the District Court, who tried the case, was of opinion that there was no proof of knowledge or assent by the special partner to these purchases, outside the legitimate scope of the business of the firm. He therefore reserved the point whether a special partner could be made liable for a change in the business without a knowledge that it had taken place, and directed a verdict for the plaintiff, subject to the entry of judgment for the defendant *non obstante veredicto.* Subsequently, and after argument *in banc* in the District Court, judgment was entered for the defendant on the point reserved.

We have before us, therefore, the case, "pure and simple," of an effort to charge a special, as a general partner, on account of a change in the business of the firm, without any knowledge whatever of a change in the business of the firm, either in point or fact, or as a presumption arising from his connection with the transaction. Can this be done?

[Singer *v.* Kelly.]

The section of the act under which this result is claimed, is the 12th section, and reads as follows: "Every alteration which shall be made in the names of the partners, in the nature of the business, or in the capital or shares thereof, or in other matter specified in the original certificate, shall be deemed a DISSOLUTION of the partnership, and any such partnership which shall in any manner be carried on after such alteration shall have been made, shall be deemed a general partnership, unless renewed as a special partnership according to the last (preceding) article."

The contest was therefore really between intelligent action as the ground of liability, on the one hand, and a claimed liability by force merely of the words of the statute, regardless of the element of knowledge or assent, on the other. Did the legislature mean this last position to be the true interpretation of the clause?

Unless it plainly appears that liability, without any reference to knowledge or intentional violation of the provision in question, was meant, we should not give it a construction tending to such penal consequences as is contended for. It would be contrary to natural justice, and such result should not be arrived at by interpretation, unless it be inevitable.

It is a maxim, further, which declares that no one shall suffer for another's fault: "*Nemo punitur pro alieno delicto.*" I admit there are exceptions to the rule, however; things *mala prohibita* may induce liability sometimes without the knowledge, really of the party ultimately liable. In cases of suretyship, liability always arises out of the acts or omissions of the principal. But in these cases the consequence results from positive legislative regulations on the one hand, and the nature of the engagement on the other. But neither of these relations exist here. I cannot find any warrant, under a fair interpretation of the clause of the statute, for holding that the special partner is a guarantor for the general partners, further than his deposit according to the contract; nor that it is to be construed as a penal statute. I think that an analysis of the statute itself will show that its consistency can only be preserved, by holding the special partner to be involved alone by his own acts or omissions of violation, or by assenting to those of his copartners, when he knows or is presumed to know them.

We have no decisions on the precise point under consideration in our own state, nor have any been referred to as adjudged in other states where a similar law exists. We must therefore explore the meaning of this clause by the light of other provisions in the statute, involving the same responsibility.

Dissolution of the partnership is what, in contemplation of the law, was the first consequence to flow from any of the changes or alterations spoken of in the section. But the law also contemplates the carrying on of the business in an asso-

ciated and general form of partnership, without the limitation provisions, and holding all liable as general partners. It is the carrying on of the business, after a violation in any of the particulars specified, which turns the concern into a general partnership. None of the general partners, without the knowledge or assent of the special partner, could change " the nature of the business," so as to render the special partner liable; it would be to apply a more severe rule than could obtain if the violation consisted in a change of the firm name, or of the capital or shares in it, which manifestly could not be done without the assent of all; and yet the consequences would be the same. Thus, there would be no distinction between intended relations, and those neither intended nor known.

In many other provisions of the statute, the consequences of violations, are fixed to the extent of general liability of the special partner; but without exception, I think, they all imply the knowledge or assent of the party to be charged by the acts done, to which the consequence is attached. A false statement in the original certificate has this effect, and this must be made by all. So after organization, transacting the business of the firm, or acting as agent or attorney for it, interfering in its business, and perhaps, for reducing capital, will each render the special partner liable; but they all imply volition with knowledge of the act.

The twentieth and twenty-first sections of the act, especially, exhibit the rule of practice evidently intended by the legislature. Assignments for certain purposes, and with certain intent, after insolvency or contemplated insolvency by the firm, or by a partner under the same circumstances, is forbidden; and the twenty-second section, provides that if any special partner shall violate any of these provisions, or *assent* to any such violations, he shall be liable as a general partner. The ground of liability is here plainly expressed as only to ensue in consequence of a personal violation of the inhibited act, or assenting to its violation by copartners. I argue, therefore, that if the statute throughout, as I think it does, fixes the consequences of violation of its provisions to be general liability, and they necessarily imply knowledge and assent, we may fairly presume that the same cause was supposed to be necessary to produce the same result in the clause in question. If the change in the nature of the business, therefore, by his copartners, was not known by the defendant Kelly, and the business was carried on afterwards without his knowledge that it had been so changed, he would not be liable in consequence thereof.

It is not intended to deny that the requisites of the statute must be strictly pursued, in organizing and conducting limited partnerships, but this should not change the rule of interpretation, which requires, in public beneficial statutes, that construction which will promote their objects, rather than destroy them.

[Singer *v.* Kelly.]

One of the great objects of the system of limited partnerships was to encourage the employment of capital, without personal activity on the part of its owners, by associating it with industry and enterprise, which might not be possessed of capital. But should we hold that a change in the business, which might be made by the active partners, without the knowledge or assent, either actual, or to be presumed from circumstances, of the special partner, the capitalist, and he be liable notwithstanding, it would deter all prudent men from investing or embarking their capital in any such way; for by the very terms of the act he is not allowed to interfere with the operations of the concern. Such a construction would put him completely within the power and at the mercy of his copartners. But when we hold him only for his own acts or assent, we place responsibility on its true footing, the choice of the party.

These views are supported by the case of The Madison County Bank *v.* Gould, 5 Hill 309. That case arose on the New York statute regulating limited partnerships, from which ours was copied, I believe, *verbatim*. It was attempted in that case, as in this, to hold the special partner liable as a general partner. One ground was a mistake of a month in the advertisement: in setting forth the commencement of the firm to be in November instead of October. The court there held, that as there was no evidence of an *intentional* violation of the statute in the mispublication, the special partner was not liable by reason of it. Another ground claimed for liability was the investment of a large portion of the capital in the purchase of real estate, not within the scope of the business of the firm. The special partner's liability was made to turn on the question of *knowledge and assent* to the purchases, although the conveyance was taken in his name, as well as that of his copartners. Bronson, J., said: "I cannot think him liable for the wrong done by his copartners, without showing that he *participated* in the act." In the same spirit is Bowen *v.* Argall, 24 Wend. 497. We are of opinion, therefore, that there was no error in the ruling of this point in the court below.

We see nothing in the other specifications of error requiring special notice. We agree with the court below, that we see no reason for holding that the special partner had anything to do with the care and collection of the debts of the firm, after it failed. If he was not involved as a general partner, he had no concern in it. His money was in it, and applicable to the debts, and that was the only extent of his connection with it.

There was no offer to show that Kelly *assented* to any assignment of assets, so as to render him liable on that score, and the court properly rejected the naked offer to prove that the general partners made some such assignments.

Judgment affirmed.