## LAFLIN & RAND CO. v. J. J. STEYTLER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 29, 1891—Decided January 4, 1892.

1. The object of the provision of § 1, act of June 2, 1874, P. L. 271, requiring that the statement to be signed and acknowledged by persons desiring to form a limited-partnership association, shall " set forth the full names of such persons," is to provide for certainty of identification, and the requirement has nothing further in view.

2. A name is the title used for the identification of the individual; and the provision referred to is sufficiently complied with, when the names with which the statement is signed and acknowledged are the names habitually used by the persons in business, and those by which they are generally known in the community.

3. The object of the provision of § 1, act of May 1, 1876, P. L. 89, requiring a schedule " with a description and valuation of the property " conributed to the capital of a limited partnership, is for the information of the parties interested, so that if they desire it they may have the data for their own judgment of the value of the property.

4. Wherefore, a schedule describing and valuing as a whole several tracts of coal land, mining rights, privileges and appurtenances, acquired by different titles but merged together and formed into a coal works, and the whole described adequately for identification by a creditor, was a sufficient compliance with the statute.*

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 132 October Term 1891, Sup. Ct.; court below, No. 776 March Term 1890, C. P. No. 1.

To the first Monday of March, 1890, the Laflin & Rand

---

* See Cock v. Bailey, ante, 328.

Powder Company brought assumpsit against " J. J. Steytler, A. W. Mellon, C. B. McLean, Norman May, F. R. Layng and Wm. J. Morgan, partners doing business as the Youghiogheny Coal Company, Limited." Issue.

At the trial, on February 12, 1890, it was admitted that the amount of the plaintiff's bill was correct, and that the goods charged for were furnished to an association called the Youghiogheny Coal Company, Limited. Under objection by the defendants, the plaintiff gave in evidence the articles of association, or statement, of the Youghiogheny Coal Company, Limited, dated July 20, 1884, and recorded.

This statement set forth the formation of a partnership association " for the purpose of mining, preparing, shipping, selling, purchasing and otherwise dealing in coal," under the act of June 2, 1874, P. L. 271, and its supplements, and proceeded:

" I. The full names of the persons subscribing to, and the amount of the capital of said association subscribed for by each are as follows :

" J. J. Steytler, of the city of Pittsburgh, state of Pennsylvania, fourteen thousand dollars.

" A. W. Mellon, of . . . . . , seven thousand dollars.

" C. B. McLean, of . . . . . , seven thousand dollars

" Norman May, of . . . . . , seven thousand dollars.

" W. J. Morgan, of . . . . . , three thousand five hundred dollars.

" F. R. Layng, of . . . . . , three thousand five hundred dollars.

" II. The total amount of the capital of said association is forty-two thousand dollars, which the said parties have agreed to divide into eight hundred and forty shares, of the par value of fifty dollars each. And we do hereby certify that the said capital is paid and is to be paid by the persons subscribing for the same, in real and personal estate and property as follows :

" The said J. J. Steytler, A. W. Mellon, C. B. McLean, Norman May, W. J. Morgan and F. R. Layng each gives and contributes his interest in the real and personal estate and property more particularly described and set forth in the following schedule, in full payment of the amount of capital subscribed for by them respectively :

"SCHEDULE.

" Containing the names of the parties contributing real and personal estate and property, with a description of the property and a valuation of the same.

" The said J. J. Steytler gives and contributes to the said association, in full payment of the amount of the capital subscribed for by him, the undivided one third part of the real and personal estate and property the whole of which is described and valued by all the members subscribing to the capital of said association as follows:

"All the undivided one half part of all the following described land, coal and coal properties, situate in Union township, Washington county and state of Pennsylvania."

[Here followed a description, by metes, bounds and areas, of (1) a tract of three acres, one hundred and eight perches; all the coal underlying a tract of land adjoining the foregoing, containing, including the foregoing, two hundred and four acres, twenty perches, with mining rights and privileges; a certain water privilege containing one hundred and five feet of water front; "all of which are known as the Buffalo Coal Mines." (2) All the coal underlying a certain tract adjoining the foregoing, described in the same way, containing one hundred and ninety-two acres, fifty-six perches.]

" Valuation                                             $43,500

" The aforesaid undivided half of the above-described coal property being encumbered by and subject to a certain purchase-money mortgage [described as to date and place of record], and to a certain lease [described as to date and place of record] ; amount of said mortgage and interest                           $13,500    $30,000

" Also, all the following described articles or things, to be used in and about said coal works and property and which are necessary to the proper operation of the same, which have been valued and approved by all parties at the prices following, to wit:

(Amount carried forward,                             $30,000.)

Statement of Facts.

| | |
|---|---:|
| (Amount brought forward, . . . . | $30,000) |
| 1 two-story tenement building . . . . | 750 |
| 1 blacksmith shop and tools . . . . | 75 |
| 2 tenement houses . . . . . . | 350 |
| Trucks and trail . . . . . . | 2,580 |
| Engine, boiler and fans . . . . . | 1,050 |
| 2 pumps . . . . . . . . | 400 |
| 80 pit wagons at $35 . . . . . . | 2,800 |
| 3 iron wagons and 2 wooden water-wagons . | 245 |
| 11 mules . . | 1,750 |
| Wire cable hauling machinery . . . | 2,000 |
| | |
| Total . . . . . | $42,000 |

" Making the total valuation of the said real and personal estate and property, approved by all the members subscribing to the capital of said association, forty-two thousand dollars; and the undivided one third thereof contributed by the said J. J. Steytler, is valued and approved by said members at fourteen thousand dollars net, being the amount of capital subscribed for by him.

" And the said A. W. Mellon gives and contributes to the said association, in full payment of the amount of the capital subscribed for by him, the undivided one sixth part of the real and personal estate and property, as herein described and valued by all the members subscribing to the capital of said association, which said undivided one sixth part thereof contributed by the said A. W. Mellon, is valued and approved by said members at seven thousand dollars net, being the amount of capital subscribed for by him."

Then followed a specification of the interests in the property described, given and contributed by each of the other members, in full payment of the amount of the capital stock subscribed for, to wit: C. B. McLean, one undivided one sixth; Norman May, one undivided one sixth; W. J. Morgan, one undivided one twelfth; F. R. Layng, one undivided one twelfth, with the valuations thereof respectively. The statement, then, after again setting out the character of the business to be conducted, and the places thereof as in Pittsburgh and in Union township, Washington county, with the principal office in Union township, Washington county; that the name of the association

Charge of Court below.

should be The Youghiogheny Coal Company, Limited; the duration twenty years; and the names of the officers and the managers for the first year, concluded:

" In witness whereof, we, J. J. Steytler, A. W. Mellon, C. B. McLean, Norman May, W. J. Morgan and F. R. Layng, have hereunto set our hands and seals the fourteenth day of July, A. D. 1884.

| " Witness, | J. J. STEYTLER, | [Seal.] |
| " R. W. MILLER. | A. W. MELLON, | [Seal.] |
| | C. B. McLEAN, | [Seal.] |
| | NORMAN MAY, | [Seal.] |
| | F. R. LAYNG, | [Seal.] |
| | WM. J. MORGAN. | [Seal.] |

The acknowledgment set forth the names of all the members as above given.

The plaintiff company resting, it was shown, inter alia, that the defendants habitually signed their names in business transactions as they were·signed to the foregoing statement, and that they were generally known in business as A. W. Mellon, C. B. McLean, etc., although when specially requested, their names in some instances had been written in full.

At the close of the testimony, the court, SLAGLE, J., charged the jury :

Gentlemen of the jury, there is no dispute as to the amount here. There is a question as to whether or not these parties are liable in any event. This question we do not want to decide now. It is too important a question to decide upon first impressions, and we have therefore concluded to instruct you that the plaintiff is entitled to recover, under the evidence in the case, and you will find a verdict for the amount agreed upon.

—The jury returned a verdict in favor of the plaintiff for $423.40. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal, specifying that the court erred :

1. In instructing the jury " that the plaintiff is entitled to recover, under the evidence in the case."

2. In directing judgment to be entered on the verdict against the defendants.

*Mr. W. F. McCook* (with him *Mr. James C. Doty*), for the appellants.

As to names, counsel cited: Linton v. National Bank, 10 Fed. R. 894; Bell v. Publishing Co., 42 N. Y. 567; Minor v. State, 63 Ga. 318; Fields v. State, 52 Ala. 348; Commonwealth v. Hamilton, 15 Gray 480; Esterling v. State, 35 Miss. 210; State v. Taggart, 38 Me. 298; Anderson v. State, 26 Ind. 30; State v. Greene, 10 Ia. 308. As to valuation of property contributed: Rehfuss v. Moore, 134 Pa. 462.

*Mr. J. S. Ferguson* (with him *Mr. E. G. Ferguson*), for the appellee.

As to compliance with the statute, counsel cited: Maloney v. Bruce, 94 Pa. 252; Eliot v. Himrod, 108 Pa. 569; Hite N. Gas Co.'s App., 118 Pa. 436; Hill v. Stetler, 127 Pa. 145. As to names: Schofield v. Jennings, 68 Ind. 233; Vawter v. Gilliland, 55 Ind. 278; Frank v. Levie, 5 Rob. (N. Y.) 599; 4 Bac. Abr., 752; Bratton v. Seymour, 4 W. 329; Paul v. Johnson, 9 Phila. 32. As to valuation of property contributed: Sheble v. Strong, 128 Pa. 315; Maloney v. Bruce, 94 Pa. 249; Vanhorn v. Corcoran, 127 Pa. 265

OPINION, MR. JUSTICE MITCHELL:

The limited association act of June 2, 1874, P. L. 271, was a wide departure from the principles of the common law governing partnerships and the liability of the individual partners to the firm creditors. It was not the first, nor has it been the last of such changes. On the contrary, it is but one step in a line of concessions to the business views and habits of a commercial age and community, and it should be construed in the spirit of its enactment. A review of the course of legislation may help us towards the true intent of the statute.

The act of March 21, 1836, P. L. 143, was an elaborate scheme for the introduction of a new kind of partnership, not previously known to the law. One or more general partners were required, and they alone were authorized to transact the business or sign the firm name, and their names alone, without the word company or other general term, could appear in the firm title. The special partners must contribute actual cash as part of the capital, could not withdraw any part of it during

the term, nor receive profits or even interest which lessened its amount; and any violation of these provisions, or any participation in the transaction of the business with the public, or the appearance of their names in the firm title, subjected them to be treated as general partners. A certificate of the facts had to be sworn to, acknowledged in the manner of acknowledgment of deeds, and recorded, before the partnership was legally constituted; and any change as to any fact set forth in the certificate must be again certified in like manner, on penalty of liability of all parties as general partners. The influence of common-law ideas of partnership is apparent throughout the act. It was manifestly regarded as an experiment, to be entered upon cautiously and hedged about with restrictions. But the act met the needs of the community, and in the language of the present hour, it had come to stay. After more than half a century it is still on our statute book as the basis of the system, and every change since has been a step forward in the same direction, and not backward. By joint resolution of April 16, 1838, P. L. 691, a partner, general or special, or his executor in case of his death, could, with the assent in writing of the others, sell and assign his interest without causing a dissolution, such alterations being certified, etc., as before. By the act of April 21, 1858, P. L. 383, the sale of a partner's interest, or an increase of the capital, either by increased contributions from the original partners or by taking in new special partners, could be provided for in advance in the articles of partnership or in a separate instrument, such changes being required to be certified and recorded as before; but, most notable of all, the omission to record was not to work a dissolution as before, or subject the special partners to general liability. The spirit of progressive legislation had discovered that changes which left the business intact, or even increased in capital, did not demand the punishment of special partners by imposing general liability for neglect of mere formalities. The act of March 30, 1865, P. L. 46, made two important further changes: The firm title, where there were more than two general partners, may contain the words "and company," (previously forbidden,) the names in full of all the partners special as well as general being put upon a sign; and the special partners were allowed to contribute their share of the capital in

goods, the value, however, being first appraised under oath by
an appraiser appointed by the Court of Common Pleas. By
the act of February 21, 1868, P. L. 42, the firm name may con-
sist of the name of any one general partner, with the addition
"and company," notwithstanding the name may be common to
such general partner and any special partner, but the sign must
be put up as required by the act of 1865.

This was the state of the law when the legislature passed the
act of June 2, 1874, P. L. 271, for the formation of partnership
associations with limited liabilities, under which the present
defendants were organized. By this act, no general partners
are required, nor is any restriction put upon the firm name or
title, except that the word "limited" must be the concluding
word. The persons desiring to form the association must sign
and acknowledge a statement, setting forth inter alia "the full
names of such persons." The act speaks only of "subscribing
and contributing capital," total amount, "and when and how
to be paid," etc. But, this being held to mean money capital
only, a supplement was passed May 1, 1876, P. L. 89, author-
izing contribution "in real or personal estate, mines, or other
property, at a valuation to be approved by all the members."
The act of 1874, it will be seen, was not a mere amendment or
supplement to anything that went before, but, like the act of
1836, a new scheme, carefully and elaborately drawn, creating
a new kind of artificial person, standing between a limited part-
nership as previously known and a corporation, and partaking
of the attributes of each. It was, however, a step forward in
the same line of legislative recognition of business demands
uniformly pursued since the start, in 1836.

With this review, we may now turn to the two points spe-
cially involved in the present case. And first, we are to inquire
what is meant by the full names of the members. This phrase
first made its appearance in the act of 1865, in connection with
the requirement that there should be "put up in some conspic-
uous place on the outside and in front of the building," a sign
on which should be painted in legible English characters, "all
the names in full of all the members of said partnership, stating
who are general and who are special partners." Previously to
this act, only the names of the general partners could appear in
the firm title, and "without the addition of the word company

or any other general word." This act required the use of the names of all the general partners except where there might be more than two, in which case the names of any two could be used with the addition of the words "and company," and the sign, as already noted, "stating who are general and who are special partners." This last requirement is the key-note of the intent; it was to give information to the public as to the persons who composed the firm, and the capacity in which they stood connected with it, as generally or only specially responsible. The object aimed at was the identification of the person, and the requirement of his full name had nothing further in view. A man's name is the designation by which he is distinctively known in the community. Custom gives him the family name of his father, and such prænomina as his parents choose to put before it, and appropriate circumstances may require Sr. or Jr. as a further constituent part. But all this is only a general rule from which the individual may depart if he chooses. The legislature in 1852 * provided a mode of changing the name, but that act was in affirmance and aid of the common law, to make a definite point of time at which a change shall take effect. But without the aid of that act a man may change his name or names, first or last, and when his neighbors and the community have acquiesced and recognized him by his new designation, that becomes his name. Two noted examples are at hand for illustration. The blunder of the friendly congressman who nominated him to West Point transposed and altered the names by which General Grant has gone into history, and considerations of convenience or taste have induced President Cleveland to omit one of the names his parents bestowed upon him. A name, therefore, is the title used for the identification of an individual, and the intent of its requirement in full is certainty of such identification. The full name, therefore, is no more than the whole of such title, as it is used by himself and his neighbors for such purpose. To construe the statute to require the literal and absolute following of the entire list of names which the person may have had bestowed upon him, would be giving it not only a very narrow and technical construction, which serves no purpose of the act, but even one which might

* Act of April 9, 1852, P. L. 301.

tend to defeat its real intent.  A statement signed " Stephen Grover Cleveland " would not create certainty, but doubt, as to its author.

The act of 1874, as already said, made no restrictions upon the firm title, except the compulsory termination "limited," and omitted the requirement of the sign, but in lieu thereof substituted the statement containing the "full names" of the persons composing the association.  This phrase was borrowed from the act of 1865, and its intent was the same in both, to secure the identification of the individual by having his name plainly set forth, in the full form by which the community would recognize him.  The appellants gave evidence that the names as signed to the statement were in the form habitually used by them in business and by which they were generally known in the community.  This, if proved, was a sufficient compliance with the statute.

The act of 1836 required the special partners to contribute actual cash, and for nearly thirty years this requirement was absolute and unyielding.  The act of 1865 for the first time permitted goods to be put in as capital, but required their value to be fixed by a sworn appraiser appointed by the court.  The act of 1874, as amended in 1876, did away with all these restrictions, and allowed the capital to be contributed in "real or personal estate, mines, or other property," without any other check as to the valuation than the agreement of all the subscribers.  The statement is to certify the kind of capital contributed, whether money or property, and in the latter case, a schedule with a description and valuation.  By the plain terms of the act the valuation is in the discretion of the parties, and (assuming, of course, good faith) may be sanguine or cautious : Rehfuss v. Moore, 134 Pa. 462.  The description, therefore, is plainly for the information of parties interested, so that they may if they desire, have the data for their own judgment of value.  Accordingly it has been uniformly held by this court that a vague, or general, or lumping description is not sufficient : Maloney v. Bruce, 94 Pa. 249 ; Vanhorn v. Corcoran, 127 Pa. 255.  It is not intended, however, nor would it be practicable, in many cases where an existing business is the basis of the new firm, to require minute specification of details that may change from day to day.  Certainty to a fair business

intent is the safe, practical criterion, as was indicated in Reh-fuss v. Moore, 134 Pa. 462, where a lumping valuation of six distinct patent rights, at a very high figure, was sustained on the ground that they were all expected to be used in the oper-ation of a single device embodying the principle of all, and were considered valuable only in combination. The schedule in the present case described several tracts of land which it appears were acquired by different titles, but which had been merged together and formed into a coal-works called the Buf-falo Mines. The schedule valued them as one tract. It also set out certain buildings, tenement-houses, engines, etc., in considerable but not minute detail, valuing each item sepa-rately, but as a part of one entire plant for the operation of coal mining. It is claimed that the various items of property are sufficiently specified and described for a creditor or the sheriff to go upon the land and identify or levy upon them. This was sufficient. The act expressly mentions " mines " as the subject of contribution as capital, and it cannot be intended that every pick and shovel, or mule and harness, should be specified and valued separately. A fair business description of the mine and its equipment is all that the statute requires.

Judgment reversed, and venire de novo awarded.

