# Blumenthal Bros. & Co. *v.* William Whitaker, Appellant.

*Partnership—Limited partnership under the act of March 21, 1836—Liability of special partner—False certificate—Affidavit of defense.*

In an action against a special partner of a limited partnership under the act of March 21, 1836, P. L. 143, to hold him liable as a general partner, where the statement avers that a renewal certificate had been filed falsely averring that the capital of the firm was unimpaired, an affidavit of defense is sufficient to prevent judgment, which avers on information and belief that the certificate was not false, and that defendant expected to be able to prove that when the certificate was filed the special capital remained unimpaired and undiminished.

*Limited partnership—Form of certificate—Act of March 30, 1865.*

Under the act of March 30, 1865, P. L. 46, which requires that in the certificate required to be filed by special partnerships under the act of March 21, 1836, the nature and value of the goods contributed shall be fully set forth and described, a certificate is insufficient to relieve a special partner from general liability which merely sets forth that "the amount of the capital stock contributed by said special partners is two hundred thousand dollars, one half thereof being in goods and merchandise." A creditor is entitled to have such a statement in detail of the nature and value of the goods or property contributed as cash, as will enable him to form his own judgment as to its value. In this particular there is no distinction between the acts of 1874, P. L. 271, and 1876, P. L. 89, and the acts of 1836 and 1865.

*Limited partnership—Renewal certificate—Reference to appraisement.*

Where the original certificate filed by a special partnership under the act of March 21, 1836, is fatally defective in having no statement of the nature and value of the goods contributed, a renewal certificate which refers to a detailed statement of the merchandise and its value as filed in the court of common pleas, but does not itself contain any statement of the nature and value of the goods is insufficient to cure the original fatally defective organization, and the partnership remains, as before, a general partnership.

Argued Jan. 24, 1895. Appeal, No. 193, by defendant, from order of C. P. No. 2, Phila. Co., March Term, 1894, No. 804, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Assumpsit for merchandise sold and delivered.

Judgment was entered for want of a sufficient affidavit of defense.

The facts are fully stated in the opinion of the Supreme Court. See also Fourth Street National Bank v. Whitaker, 170 Pa. 297.

*Error assigned* was order entering judgment.

*Charles Biddle* and *Geo. Tucker Bispham*, *Wm. Rudolph Smith* with them, for appellant. All that the law requires in the formation of a limited partnership is substantial compliance with its provisions: Andrews v. Schott, 10 Pa. 47; Levy v. Lock, 47 Howard's Rep. 394; White v. Eisman, 134 N. Y. 102; Singer v. Kelley, 44 Pa. 145; Cock v. Bailey, 146 Pa. 328; Laflin & Rand Powder Co. v. Steyler, 146 Pa. 434; Lanshire v. Marks, 4 E. D. Smith, 610.

It is impossible for the plaintiffs to show a single case in Pennsylvania that has construed this act of 1865 at all, or show any authority for the contention that in the certificate itself there should be recorded the entire inventory and appraisement of the goods as made up in the court of common pleas.

It will be observed that the allegation in the statement as to falsity in the certificate of renewal of December 31, 1892, is expressly denied by the affidavit of defense, and this denial is coupled with the allegation that the defendant expects to be able to prove the truth of the denial at the trial.

*William S. Divine* and *Samuel B. Huey*, for appellees.—The substantial ground for liability is that the capital did not remain in the partnership at the time of the respective renewals unimpaired, as certified by the special partners.

Notwithstanding the allegations of the plaintiffs as to impairment of capital, there is no allegation of actual bona fide contribution of either money or merchandise at the time of the renewals, non constat that either of the specials ever contributed any capital goods at the time of the renewals.

The certificate in question is neither a warranty nor a representation, nor yet an insurance of the truth of the facts set up in it, but the facts in question and the formalities of the act are conditions precedent to the formation of the special partner-

ship, and exemption from general liability is expressly contingent upon the existence of the facts and the performance of the conditions: Haddock v. Grinnell Mfg. Co., 109 Pa. 372.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

The court below made absolute a rule to show cause why judgment should not be given for want of a sufficient affidavit of defense, and defendant appeals.

A full statement of the facts concerning the organization in December, 1891, of the partnership of Haines & Company, of which defendant was a member, down to the assignment for benefit of creditors, on 26th March, 1894, is given in the opinion filed herewith, in case of Fourth Street National Bank against the same defendant; so the same facts need not here be repeated. There is a difference, however, between the claim here, and those of the Fourth Street National Bank, and Jane C. Reitzel against this defendant and Richard W. Bacon, in two particulars, to wit, there was no question raised in either of those cases as to the formal regularity of the proceedings necessary under the act of 1836 to constitute a limited partnership; in this case it is strenuously contended there was a fatal omission to observe the essential requirements of the law in the original organization, and that, therefore, from the first, all the partners were answerable as general partners. Here the debt of plaintiffs was contracted between October 26, and December 14, 1893, before the renewal statement and certificate of December 30, 1893, was put of record; so that any false statement of fact in that certificate could not have been relied on by plaintiffs as a basis of credit, when they sold their goods to the insolvent partnership. There were but two statements of fact on record which could have misled these plaintiffs, that of the original organization in December, 1891, and that of the first renewal in December, 1892. In the year intervening between the first and second renewals, the financial affairs of the partnership and the condition of the special capital may have undergone a complete change.

In the original articles of copartnership, filed of record December 31, 1891, and subscribed by all the partners, is this statement of fact: "Fourth. The amount of capital contributed by said special partners is $200,000, one half thereof being

in goods and merchandise." One year afterwards, on the 31st of December, 1892, when the partnership was renewed, this statement was made, subscribed by all the partners: " The amount of capital originally contributed by each of the said special partners to the common stock was $100,000, one half thereof being in cash, and the other half thereof in goods and merchandise, making the aggregate amount of capital contributed by them $200,000, as designated in the said original certificate, and the same remains unimpaired and undiminished as their contribution to the present renewal and continuance of the said limited partnership." The plaintiffs aver in their declaration of claim that this part of defendant's statement of renewal is false, as follows: " And the plaintiffs do now aver that the said averments made by the said defendants, in the said certificate, to wit, that their contribution of capital remained unimpaired and undiminished in the renewed limited partnership, as above set out, were untrue and false in fact. That on December 31, 1892, the capital contributed by the said special partners was impaired and diminished, and almost entirely used and wasted in the business of the firm, and that the said firm was even then insolvent." To this, defendant replies in his affidavit of defense: " I do not admit that the said averments, so quoted from the certificates, or either of them, or any part thereof, are untrue or false in fact. At the time the certificates and each of them were signed by me, I believed that each and all of the statements in the said certificates, including the averments quoted in plaintiffs' statement, were true. I believed that the averment in the certificate of December 31, 1892, that the contribution of Richard W. Bacon and myself to the capital of the firm remained unimpaired and undiminished, was true in fact; . . . . I had no reason whatever to suppose that the said averments or either of them were in the slightest particular untrue, nor do I now know or believe they are untrue. On the contrary, so far as the special capital on December 31, 1892, is concerned, from information obtained within four weeks last past, I believe and expect to be able to prove that the said special capital was wholly unimpaired. "

On a comparison of this affidavit with those in the Fourth Street National Bank cases, and the Reitzel case against the same defendant, there is a very significant variance; the last

named cases were claims on written instruments delivered after the certificate of December, 1893, and there is, in substance, no denial of the falsity of that certificate, but at best only an averment of ignorance of its falsity at the time it was made. Here, however, as to the certificate of 1892, the oath is, that from information obtained within four weeks last past, defendant believes and expects to be able to prove that in December, 1892, there was no impairment or diminution of capital. It will be noticed, the act requires the oath to the certificate to be made by the general partner, and not by the special one ; if this defendant, the special partner, had been the affiant, his averment now of belief would hardly be sufficient; absolute knowledge, on such a state of facts, would probably be required now ; but as his knowledge of the then fact must depend now on information, it would be a harsh exaction to hold that he must swear absolutely to knowledge resting on present inquiry. Admit, with all its force, the suggestion, why did he not, by personal examination and inquiry, know the truth or falsity of the statement when he subscribed it, and thus be able now to deny or admit plaintiffs' averment, not on belief, but on actual knowledge? At best, however, this is purely technical, so far as it affects the merits of the case; plaintiff suffered no injury if the statement of 1892 is true ; a trial on the merits but delays his judgment, if it is false. As defendant makes oath he now believes and expects to prove it true, we think the affidavit in that particular sufficient.

But the second objection which was not raised in the other cases is a more serious one.

Under the act of 1836, before the passage of the act of 30th March, 1865, no contribution except cash to the capital stock of limited partnerships was permissible. The first act required the name of the firm, the nature of the business, the names of the general and special partners, the amount of capital the special partners contributed, and the commencement and duration of the term all to be set out. These facts were all set out in the original certificate of December, 1891 ; but the following is the whole of the statement concerning the contribution of the special partners: " The amount of the capital stock contributed by said special partners is $200,000, one half thereof being in goods and merchandise." The right to make any part of the contri-

bution in merchandise rests wholly on the act of 1865, the first section of which says : " It shall and may be lawful for any special partner to make his contribution to the common stock of any limited partnership he may become a member of, in cash, goods or merchandise : Provided, that when such contributions are made in goods or merchandise, the same shall first be appraised under oath, by an appraiser who shall be appointed by the court of common pleas of the county in which such partnership is to be carried on : And provided also, that in the certificate, now required by law, the nature and value of the said goods shall be fully set forth and described." It will be noticed, the " nature and value " of the goods, now permitted to be put in as capital stock, are to be set forth in the certificate now required by law ; that is, as required by the act of 1836. There was no specification of the nature and value of the goods in the original certificate of December, 1891. What is the effect of such omission ? The act of 1836 says: " No such partnership shall be deemed to have been formed, until a certificate shall have been made, acknowledged and filed and recorded, nor until an affidavit shall have been filed as above directed." It seems to us no argument is necessary to show that the bare mention of merchandise in the certificate is not sufficient; there is a palpable omission to set out the nature and value. In thus characterizing it, we have no notion of departing from the reasonable interpretations put upon the act in Andrew v. Schott, 10 Pa. 47 ; substantial compliance with the act is what is required ; in Singer v. Kelly, 44 Pa. 148, the statute should be construed so as to promote its objects, rather than destroy them ; Cock v. Bailey, 146 Pa. 328, it never was intended these acts should be used as a trap to catch persons who have honestly complied with every substantial requirement, and impale them on a meaningless technicality ; Laflin & Rand Powder Co. v. Steytler, 146 Pa. 434, progressive legislation has discovered that changes which leave the business intact, or even increase its capital, do not demand the punishment of special partners, by imposing general liability for neglect of mere formalities. But approaching the interpretation of the statute in the liberal spirit of these decisions, who can, without a violation of every rule of statutory interpretation, undertake to say that when the act declares the nature and value of the goods

shall be fully set forth, calling the contribution $50,000 worth of merchandise is a substantial compliance with its provision?

While the adjudications of cases under the act of 1874 and 1876 are not always in point under the act of 1836, the opinion of the court as to the importance of a compliance with this provision is in point, because the purpose in setting out the nature and value of the goods in case of a joint stock company and a limited partnership is the same. The act of 1876 enacts that: " Where property has been contributed as part of the capital, a schedule containing the names of the parties so contributing, with a description and valuation of the property so contributed, shall be inserted." In Maloney Mfg. Co. v. Bruce, 94 Pa. 249, where the property contributed had been scheduled as " furniture, fixtures, and all the goods, tools and chattels now on the premises . . . . valuation, $12,500;" this court held: " This is not the kind of schedule contemplated by the act of 1876. The description is too general to enable any one to form a correct estimate of the extent of the property, and a lumping valuation renders it equally difficult to judge of values. The property contributed was intended as the equivalent of a cash capital, and the plain object of the provision in the act of 1876 requiring a schedule, was to enable creditors to ascertain precisely of what the property consisted, and to judge of its value. " In Vanhorn v. Corcoran, 127 Pa. 255, it was said: " Prima facie, a firm transacting business is a general partnership. . . . A limited partnership that has not complied with the law of its creation is not a limited partnership at all; it is, however, a partnership in which all the members are liable as at common law. It would lead to more than confusion to permit a defective schedule like this to be supplemented by evidence to show that there really was property, and that it was of the value indicated. It would open the door to all kinds of fraud and perjury, and no man would know whether such an association was a valid limited partnership until after the verdict of a jury. " In Sheble v. Strong, 128 Pa. 315, where the subscription to the capital stock was made in machinery at a large valuation, it was held to be fatally defective, the present chief justice saying in the opinion: " Assuming that the subscriptions to the capital stock are certified according to the fact, it is very clear that the statement is fatally defective, in that it does not con-

tain such a detailed description and valuation of the machinery as the supplement of 1876 requires."

There is no distinction between the acts of 1874 and 1876 and the acts of 1836 and 1865, in this particular, that the creditor must have such a statement in detail of the nature and value of the goods or property contributed, as cash, as will enable him to form his own judgment as to its value; the reasons for so holding, are just as imperative under the older acts as the later ones. Having omitted this important statement in the certificate of 1891, then the act declares the consequence: "No such partnership shall be deemed to have been formed." As a result, this partnership was general for the year 1892, instead of limited, as the members sought to make it.

It is, however, argued, the renewal in December, 1892, constituted it a limited partnership, for in that certificate, it is stated, a detailed statement of the merchandise and its value was filed in court of common pleas No. 3 of Philadelphia county, No. 715½ December term, 1891. We have given this question most careful consideration, with a view to securing for defendant a trial on the merits, if his complaint of error could be sustained; but both the certificate and affidavit aver that the partnership formed is a renewal of that created by the organization of December, 1891; that was, as we have seen, a general partnership; by the fatal defect of a most material part of the certificate, creditors had notice it was a general partnership, and a renewal of this simply continued the general liability for the year 1892.

In reply to this, it is argued, nevertheless, it at least must be treated as the organization of a new limited partnership; but when we turn to the certificate and affidavit for the nature and value of the goods, where the act peremptorily requires they shall appear of record, we find nothing but a reference to an appraisement filed in court. The first section of the act provides for an appraisement to be made by an appraiser appointed by the court; the object of this, obviously, was to prevent fraud by overvaluation; but this direction is immediately followed by this: "And provided also, that in the certificate now required by law, the nature and value of said goods shall be fully set forth." The act could not have been more explicit if it had said, but said appraisement shall in

nowise dispense with setting forth the nature and value of the goods in the certificate and affidavit required to be filed with the recorder of deeds by the sixth and seventh sections of the act of 1836.   If the attempt had in fact been to form a new partnership instead of to renew an old one, the failure to file a statement of the nature and value of the merchandise in the office where the law requires it to appear would have been fatal; the partnership would have been deemed general.   The parties cannot select a despository for the information, other than that specified in the act; they might as well have referred the public to their own business office, where they would find the detail statement on file.

We are of opinion the court below committed no error in decreeing the rule absolute, and the judgment is affirmed.

MR. JUSTICE MITCHELL dissents, being of opinion that the defect of the certificate of 1891 in not containing a statement or schedule of the goods, was cured by the renewal certificate in 1892 referring to the detailed statement filed in C. P. No. 3.