## Angst v. Walker

*Murray Mackson,* for plaintiff.

*Roger N. Nanovic,* for defendants.

HEIMBACH, P. J., March 29, 1967.—Plaintiff, John W. "Bud" Angst, brings this action of mandamus against Carbon County Commissioners James F. Walker,[*] Ralph E. Mooney, and Thomas A. Zimmerman, constituting the County Board of Elections in and for the County of Carbon, praying for the entry of judgment against them and commanding them to cause the name of plaintiff, a candidate for the office of Commissioner of Carbon County, to be printed upon the official ballot of the Republican Party for the primary election to be held May 16, 1967, as John W. "Bud" Angst.

This action follows the election board's refusal, after a hearing, to print the requested name, John W. "Bud" Angst, on the ballot. All preliminary requirements have been met and the matter is properly before us.

The parties have, by agreement, submitted this matter to us on the testimony taken at the hearing before the election board.

The position of the election board is that the name "Bud" is a nickname, and only his Christian name, John, followed by his middle initial and surname, may be printed on the ballot.

It is the contention of petitioner that, albeit his Christian name is John, "Bud" likewise is a part of his legal name, and since the election law provides for the printing of the candidate's name on the ballot (section 1002 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended by the Act of January 8, 1960, P. L. (1959) 2142, sec. 1, 25 PS §2962), he has a right to have his full legal name printed.

The Election Code does not define "name". We

---

[*] James F. Walker, being a candidate for the same office, has disqualified himself.

must look elsewhere for the answer to the question before us: Is "Bud" a part of the legal name of the candidate?

We look, of course, to the pronouncements of the courts, in and outside of Pennsylvania, which have considered the problem.

In Laflin & Rand Co. v. Steytler, 146 Pa. 434, the court, in passing on the meaning of the phrase: "by the full name of the members", in the Limited Associations Act of June 2, 1874, P. L. 271, said, at page 442:

"The object aimed at was the identification of the person, and the requirement of his full name had nothing further in view. A man's name is the designation by which he is distinctively known in the community. Custom gives him the family name of his father, and such praenomina as his parents choose to put before it, and appropriate circumstances may require Sr. or Jr. as a further constituent part. But all this is only a general rule from which the individual may depart if he chooses. The legislature in 1852 provided a mode of changing the name, but that act was in affirmance and aid of the common law, to make a definite point of time at which a change shall take effect. But without the aid of that act a man may change his name or names, first or last, and when his neighbors and the community have acquiesced and recognized him by his new designation, that becomes his name. . . . A name, therefore, is the title used for the identification of an individual, and the intent of its requirement in full is certainty of such identification. The full name, therefore, is no more than the whole of such title, as it is used by himself and his neighbors for such purpose".

Laflin & Rand Co. v. Steytler was cited with approval in In re McUlta (M. D. of Pennsylvania), 189 Fed. 250, where the court, at 251, adopted the following statement:

"At common law a man may lawfully change his name and will be bound by any contract into which he enters under his adopted or reputed name; and by such name he may sue and be sued. (citing cases).

"There is in force a statute in Pennsylvania, passed April 9, 1852 (P.L. 301) which provides a method for a person to change his name; said act reads as follows: 'It shall be lawful for the court of common pleas of any county . . . to make a decree, changing the name of any person resident in said county, at any time three months after being petitioned to do the same by such person; provided, that notice of the decree, after the same shall be made shall be published in one or more newspapers to be designated by the court, for four successive weeks.' The act of 1852 did not change the common-law rule, but was passed in affirmance and aid of the common law. Without the aid of that act, a man may change his name or names, first or last, and when his creditors and the community have acquiesced and recognized him by his new designation, that becomes his name".

The Act of April 18, 1923, P. L. 75, 54 PS §1, repeals the Act of April 9, 1852, P. L. 301, but not the substantive law applicable thereto. See Egerter's Appeal, 32 D. & C. 164.

"A person's name is the designation ordinarily used, and by which he or she is known in the community. . . . Whether the identification is sufficient is ordinarily a question of fact": State, ex rel. v. Corneli, 347 Mo. 932, 149 S. W. 2d 815, 821.

"A man's 'name' is the designation by which he is distinctively known in the community": Badger Lumber Co. v. Collinson, 97 Kan. 791, 156 Pac. 724, 725.

In 18 Am. Jur. 295, §177, the following statement appears:

"Provided he acts in good faith and with honest purpose, a candidate for office is legally entitled to have printed upon the ballot the name which he has adopted

and under which he transacts private and official business, . . . (citing cases)".

A summary of the definition of a name is found in the following statement, 38 Am. Jur. 594, §2:

§2. "Definition.—For all practical and legal purposes, a man's name is the designation by which he is known and called in the community in which he lives and . . . has been defined as the word or combination of words by which a person is distinguished from other individuals, and also, as the label or appellation which he bears for the convenience of the world at large in addressing him, or in speaking of or dealing with him".

The statement continues, page 601:

"§12. Designation of person by Commonly known name.—Since the object and purpose of describing a person by his name is to identify him, it is a general rule that a person may be designated in legal proceedings by the name by which he is commonly known, although this does not constitute his true name. Moreover, it is not necessary that the person shall be known as well by the one name as by the other; it is sufficient if he is known by both names".

With these pronouncements before us, an affirmative answer to the following question will determine the candidate's right to have his name on the ballot as prayed for: Does John W. Angst transact his private and public business as "Bud" Angst, as well as John W. Angst, and is he commonly known both as "Bud" Angst and John W. Angst?

The uncontradicted testimony before us, supported by some 56 exhibits, which include more than 100 individual documents, is that continuously and routinely, Mr. Angst transacted his business and social affairs, from the time he was old enough to do so, in the name of "Bud" Angst as well as John W. Angst. Legal proceedings within the past several years were brought against him in the name of "Bud" Angst. As a

radio announcer, he uses the name "Bud" Angst. The conclusion is inescapable that he was better known in the community and elsewhere as "Bud" Angst, rather than John Angst.

Wherefore, we find that "Bud" is a part of Mr. Angst's legal name, and not only does Mr. Angst have the right to have his full legal name printed on the ballot, but the electorate would be prejudiced if he were not accorded that right.

We have found "Bud" to be a part of Mr. Angst's legal name, and not a nickname, as found by the board of elections. "Nickname" defined (Webster's New International Dictionary, 2d ed.) means:

"(1) a name given instead of the one belonging to a person, place or thing, usually descriptive and given in sport.

"(2) to misapply the name of (one person or thing) to another; to misname".

"Bud", as used by Mr. Angst, fits in neither category.

We completely agree with the election board that unless a name has been adopted as a legal name, and proved to be such, it must be considered a nickname and, as such, is not a name under the Election Code, and the election board would be justified in refusing to print such nickname on the ballot.

Wherefore, we make the following

ORDER

And now, March 29, 1967, judgment is entered against defendants and it is hereby ordered, adjudged and decreed that they cause the name of John W. "Bud" Angst to be printed upon the official primary ballot of the Republican Party for the primary election to be held on May 16, 1967, as a candidate for the office of county commissioner. Costs on the County of Carbon.