**In Re: Niedbala, a/k/a Hickey**

*Marion E. Popiel,* for petitioner.
*Mary Restmeyer,* for respondent.
*Joan Schoemaker,* guardian ad litem.

ROSS, E., *J.,* May 28, 1985—Susan J. Niedbala, mother of minor female child, Tracy Ann Hickey, a.k.a. Niedbala, asks the court to direct the Bureau of Vital Statistics, Department of Health, Commonwealth of Pennsylvania, to amend certification of birth no. 1193290-79 to show the child's surname as "Niedbala" rather than "Hickey." Her prayer for deletion of the name of the father, James A. Hickey, has been withdrawn. The father contests the change of registration. Since no one spoke for the child, the court on January 28, 1985, appointed Joan Shoemaker, Esq., as guardian ad litem: Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, §751, 20 Pa. C.S. §751; Application of Saxton, 309 N.W.2d 298, 301 cert. den. 455 U.S. 1034.

## THE FACTS

The facts adduced by the credible evidence taken at hearing follow.

Tracy Ann was born October 28, 1979, at Magee Women's Hospital to Susan J. (Orr) Niedbala and James A. Hickey. The mother used the name Niedbala in her hospital registration to conform with her medical insurance. It is her contention that she gave the child's surname as "Niedbala" to the

birth registrar but the surname "Hickey" was somehow substituted therefor. The father had no dealings with the registrar. The certificate of birth identifies the name of the child as "Hickey".

The parents never married. The mother divorced her first husband, David Niedbala, prior to Tracy's birth. He died in June, 1981. The former husband's death notice listed Tracy Ann as his child along with his natural children by petitioner, Kenny Niedbala (now 11) and Sharon Niedbala (now 9).

For eight weeks before Tracy's birth Mrs. Niedbala and her two Niedbala children lived as a family with respondent. The unit broke up four and one half weeks after Tracy's birth, Mrs. Niedbala taking the three children with her when she left.

Hickey, although in full cast due to injuries, was at the hospital when Tracy was born. He visited mother and child before discharge but denies seeing "Niedbala" on the child's crib, although the name was attached. Hickey saw Tracy at Christmas, 1979.

The mother later admitted Tracy to the hospital in March, 1980 as "Niedbala" in order to have insurance coverage for the child. Hickey was present at this later hospitalization. Strained relations followed.

In June, 1980, at no. 2479 of 1980, family division, respondent asked for permanent custody of Tracy Ann "Hickey". After a hearing September 24, 1980, on the mother's petition to halt the father's partial custody of the child "Hickey" on grounds of his and his home's unfitness, a support and partial custody order was entered. The next day, September 25, 1980, Tracy was baptized as "Niedbala".

She subsequently was enrolled in pre-school as "Niedbala" and graduated as such May 16, 1984.

But on April 8, 1983, petitioner filed a support complaint indentifying Tracy as "Hickey".

Tracy now attends St. Martin's elementary school as "Hickey" pursuant to school policy of using the birth record name after the father objected to use of the name "Niedbala". The child visits her father regularly, often accompained by her siblings who call Hickey "Jim". Tracy calls her father "dad". He has regularly supported his daughter since birth. At his request the school informs him of her progress.

According to Mrs. Niedbala, Tracy grew up as "Niedbala" and is called such by her friends but, when away from both parents and in the company of the guardian ad litem, Tracy Ann introduced herself as "Hickey". She also spontaneously introduced herself to respondent's expert witness, Marilyn Grady, as "Hickey". She and her siblings know her father is not their father.

The names "Hickey" and "Niedbala" are held in high community esteem. The father has practiced law since 1972 as a member of the Pennsylvania, Washington and Florida bars and has never been subjected to disciplinary proceedings or convicted of any crime. He has been divorced since April, 1980, and his only child is Tracy. He had planned to marry Mrs. Niedbala but was disappointed.

The guardian ad litem on May 10, 1985, recommended to the court that the prayer of the petition be denied as not serving the child's best interests.

## THE LAW

The orphans' court division has exclusive jurisdiction over birth record amendment proceedings: Probate, Estates and Fiduciaries Code of June 30, 1972, supra, §711(9), 20 Pa. C.S. §711(9). A birth record is only prima facie proof of the facts set forth

therein: Judicial code of July 9, 1976, P.L. 586, §6103(a), 6104(a)(b); Laflin & Rand Company v. Steytler, 146 Pa. 434, 442, 23 Atl. 215, 217(1892).

The Vital Statistics Act of June 29, 1953, P.L. 304, §401 and 703, 35 P.S. §450.401 and 450.703, provides for birth registration by the attending physician, midwife, parents or others and for regulations governing birth record correction. Advisory Health Board regulations permit amendment upon the filing of an order by a court of competent jurisdiction with the Bureau of Vital Statistics: 28 Pa. Code §1.3(4).

One amendable piece of information on the birth record is the child's surname. Surnames in England date back only to the late fourteenth century when, by custom and not law, they became hereditary: Laflin & Rand Company v. Steytler, supra, 442, 217; Application of Shipley, 205 N.Y.S.2d 581, 586. At common law a minor of sufficient understanding or an adult may adopt any surname so long as no fraud or misrepresentation is thereby perpetrated or any interference with another's rights: Laflin & Rand Company v. Steytler, supra, 442, 217; Application of Halligan, 361 N.Y.S.2d 458, 459; Application of Shipley, supra, 588; Luscomb v. Yates, 5 B. & Auld 544, 556.

In the instant case Tracy Ann lacks sufficient understanding to choose her own surname (although in the future she may do so). At any event, after the advent of surnames the law evolved that the father of such a child born in wedlock had a protectible interest in the child's bearing his surname: Donald J. v. Evna M.-W., 147 Calif. Rptr. 15, 20. As to a child whose parents were not wed, the harsh early rule that such a child was filius nullius, faded and the mother came to have a protectible interest in having

the child bear her surname: Donald J. v. Evna M.-W., supra, 20; Application of Norman, 205 N.Y.S.2d 260, 264. The father who could establish paternity, however, might prevail as to surname designation over unrelated persons: Donald J. v. Evna M.-W., supra, 19.

These former principles giving protectible rights to one parent or the other of a minor child, lacking sufficient understanding, have fallen. Today the primary question is the child's best interests: Petition of Christjohn, 286 Pa. Super. 112, 116, 428 A.2d 597, 599.

Regulations of the Advisory Health Board do not reflect the case law. They distinguish between the parents' and child's status in granting prima facie "rights" to choose the surname. The child of an unmarried mother "may" be registered with any surname "requested" by the mother: 28 Pa. Code §1.6, 5 Pa. B. 2926. The parent with custody of a child born to separated but married or divorced parents may designate any surname such parent desires: 28 Pa. Code §1.7(a).

The non-mandatory wording of the regulations saves them from fatal defect and gives the Bureau of Vital Statistics a basis to accept with some certainty information from one parent or the other. When the court, however, is confronted with the question of whether to amend or change the surname of a child, lacking sufficient understanding to choose for herself, then the court must not consider protectible parental interests or whether the parents are married, divorced or never married or whether they are male or female, but rather the child's best interests: Petition of Chirstjohn, supra, 116, 599; Petition of Schidlmeier, 133 P.L.J. 73, 75; In re Mull, 18 D. & C.3d 290, 294 (1981); DiBacco Petition, 32 D. & C.2d

90, 90-91 (1963); Rothstein Petition, 28 D. & C.2d 665, 667 (1962).

## THE FACTS APPLIED TO THE LAW

In determining the child's best interests, the court will take into account several factors. See Application of Saxton, supra, 301.

The first factor is the child's preference. In the instant case the child called herself "Hickey" to the court appointed guardian when out of either parent's control and, in the spontaneous setting of Marilyn Grady's introducing herself, said she was "Hickey". The child identifies herself as "Hickey" in non-contrived situations.

The second factor is the effect of the change on the preservation and development of the child's relationship with each parent. See In re Petition of J.M. & R.M., 32 D. & C.3d 229, 236 (1985). Here, whether Tracy is a "Hickey" or a "Niedbala," her relationship with her mother will abide. She has lived with her mother all her life and her mother wishes this to continue. To change Tracy's name to "Niedbala" would deprive her of another link to the father from whom she is separated but loves and who loves her, and would jeopardize her identity of herself as "Tracy Hickey", daughter of James A. Hickey.

The next factor relates to how long the child has used "Niedbala" and how long "Hickey". The record is unclear. Tracy was baptized as "Niedbala" the day after a bitter custody dispute in 1980. In that case she was called "Hickey" by both parents. In 1984, she was called "Niedbala" in nursery school but "Hickey" by both parents in court. Now she responds in elementary school to "Hickey" and identifies herself as such. In the face of such ambivalent

testimony it cannot be said the child has any vested interest in the name "Niedbala" and has identified herself as "Hickey".

It is clear that each name has a large degree of community respect as does each parent (the fourth factor) and the child accepts herself and is accepted by her half-siblings as the child of Mr. Hickey. No credible testimony was adduced in support of a finding that the name "Hickey" would subject the child to harassment or embarassment in the community at large (the fifth factor).

Since Mr. Hickey loves his daughter and has a continuing and genuine interest in his paternal relationship, since the child reciprocates this interest and since the name of her mother's divorced and deceased first husband has no direct relationship to Tracy Ann other than that her mother will bear this name (unless remarried) or other than that the name applies to her siblings, the court finds compelling reasons to deny the petition as not in the child's best interests.

## ORDER OF COURT

And now, May 28, 1985, after hearing on the petition of Susan J. Niedbala, mother of Tracy Ann Hickey, a.k.a Niedbala, a minor child born October 28, 1979, praying for an order directing the Bureau of Vital Statistics, Department of Health, Commonwealth of Pennsylvania, to amend birth certificate no. 1193290-79 to change the surname of Tracy Ann Hickey to Tracy Ann Niedbala, it is ordered, adjudged and decreed that the prayer of the petition is dismissed.

Leave is granted petitioner to withdraw the prayer of her petition to delete the name of James A. Hickey as father of Tracy Ann Hickey.